OVERSEERS OF TRENTON v. OVERSEERS OF NOTTINGHAM.

1. An indented servant, imported from Europe, can gain a settlement in a township in New Jersey only by an actual service under his indenture for an entire year.

2. What circumstances shall amount to such service.

*Certiorari* removing the order of the Sessions of Burlington county.

The case in the sessions as stated, was as follows

" On appeal from the order of the two justices, removing Ann M'Coy and her two children from Nottingham to Trenton. The appellees, in support of the order, proved that Ann M'Coy, the pauper, sometime in the year 1788, was married to one James M'Coy, in the township of Nottingham; that the said James M'Coy was a healthy person, coming directly from Europe, and arriving in Philadelphia sometime in the autumn of 1781, 1782 or 1783, indented as a servant to Biddle & Stewart, merchants in Philadelphia, and by them, in a few days after his arrival, either indented anew to Bernard Hanlon, of Trenton, or his original indenture assigned over in due form of law. That the said M'Coy was about fifteen years of age when he came into the service of Bernard Hanlon, in Trenton; that he was bound for four years and a half. He continued with Hanlon about three months, and then ran away from his master, and continued absent without his master's permission or consent for at least nine months. About [290] that time he returned to Trenton, and made application to be taken again into the service of his master. Hanlon refused to receive him, but agreed to take £12 for his time, he having originally paid £18 for him. M'Coy paid £6 of the money in part payment, and was afterwards, about six or eight weeks subsequent to his return to Trenton, put into prison for debt. After he had remained there some time, one John Bell came to Trenton and requested permission to take him out of gaol into his service. Hanlon replied

he might do as he pleased—M'Coy was his own master. Bell took him out of gaol, and M'Coy lived with him in Trenton about nine or ten months, at about 40s. per month. Hanlon received none of the wages. M'Coy was under twenty-one years of age when he made the agreement with his master, and the four years and a half had not expired at the end of his service with Bell. It did not appear that Hanlon had ever given up or cancelled the indenture to him ; nor that M'Coy had ever gained a subsequent settlement in another place. Whereupon, on these facts the Sessions, upon the appeal, confirmed the order of removal to Trenton, being of opinion that James M'Coy had gained a legal settlement in that township, and that his wife and children were properly removed there."

In support of the order, it was contended—

1st. That M'Coy came within the description of a "healthy person coming directly from Europe," the words used in the act of assembly of March 11th, 1774, (*Allinson* 403,) and that his connected residence in Trenton was above a year.

2. That he served a year under the indenture—first, three months with Hanlon, and then nine or ten months with Bell, the indenture not being cancelled ; that these distinct periods of service might be connected by the court ; that Hanlon's refusal to receive him, and agreeing to take £12 for the remainder of his time, was not a cancellation of the indenture, and amounted neither to a fulfilment of its terms, or a discharge from its obligation. That in fact M'Coy was at the time under twenty-one years of age, and could not legally perform an act so materially involving his interests.

[291] 3d. It was said that if the agreement was tantamount to a performance of the indenture, it could be so only on the ground that it was an equivalent, and in that case the payment of the money was a compensation for time, and within the equity of the statute.

KINSEY, C. J.

By the act of 1774, an indented servant, imported from

Europe, or brought from the neighboring colonies, obtains a settlement in that township, &c., where he shall serve his or her master for one full year.

The only question, then, which can arise in this case is, whether the service to Bell can be considered as a service to Hanlon, under the indenture, or assignment to Hanlon. If it can be regarded as a continuance of his former service to Hanlon, then I should think that he obtained a settlement in Trenton. If we cannot put this construction upon his acts, he obtained no legal settlement there, not having complied with the terms prescribed by the law.

From the state of the case it appears that Hanlon, when applied to by Bell, declared that M'Coy was his own master, and that he had agreed to sell him his time, for which M'Coy had actually paid one-half of the stipulated sum.

It appears, also, that M'Coy hired himself to Bell, under a new contract, at about 40s. per month, and received his wages from Bell, which expressly negatives the service to Hanlon. Whether the indenture was or was not legally discharged, it is clear that he did not serve Hanlon, or serve under Hanlon's indenture during this last period. He has therefore not served a master for one full year, which by the words of the act is a necessary requisite in order to obtain a settlement. The case of *The King* v. *St. Luke Middlesex*, in 1 *Bl. Rep.* 553, and 1 *Botts' Poor Laws* 544, are full in point. The order of justices and Sessions must be quashed.

Order quashed.

Cited in *Jefferson* v. *Pequannack*, 1 *Gr.* 189; *Orange* v. *Springfield*, 2 *Gr.* 325.